NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0960-22
A-3087-22

STATE OF NEW JERSEY,

      Plaintiff-Respondent,

v.

JAHMAD GREEN, a/k/a
JAHMAD GREE,

      Defendant-Appellant.

_____

STATE OF NEW JERSEY,

      Plaintiff-Respondent,

v.

FRANCIS BRACE, a/k/a
JAZMEIR JACKSON,

      Defendant-Appellant.

_____

Submitted September 25, 2024 – Decided October 18, 2024

Before Judges Paganelli and Torregrossa-O'Connor.

On appeal from the Superior Court of New Jersey, Law Division, Passaic County, Indictment No. 15-04-0352.

Jennifer Nicole Sellitti, Public Defender, attorney for appellant Jahmad Green (Monique Moyse, Designated Counsel, on the brief).

Jennifer Nicole Sellitti, Public Defender, attorney for appellant Francis Brace (Steven M. Gilson, Designated Counsel, on the brief).

Camelia M. Valdes, Passaic County Prosecutor, attorney for respondent State of New Jersey in A-0960-22 (Ali Y. Ozbek, Assistant Prosecutor, of counsel and on the brief).

Camelia M. Valdes, Passaic County Prosecutor, attorney for respondent State of New Jersey in A-3087-22 (Lauren P. Haberstroh, Assistant Prosecutor, of counsel and on the brief).

Appellant Francis Brace filed pro se supplemental briefs.

PER CURIAM

Codefendants Francis Brace and Jahmad Green appeal from separate Law Division orders denying their individual petitions for post-conviction relief (PCR). We consolidate their appeals in this opinion, as they arise out of their joint 2017 jury trial and convictions for first-degree aggravated manslaughter, N.J.S.A. 2C:11-4(a)(1), and second-degree aggravated assault, N.J.S.A. 2C:12-

1(b)(1), and related firearms offenses.[1] We affirm as neither defendant established a prima facie claim of ineffective assistance of counsel.

## I.

### A.    The Trial

We distill the following pertinent facts from the record. Brace, Green, and a third codefendant, Gregory Oliver, were indicted and tried together for the 2014 shooting and alleged murder of Jaleek Burroughs and attempted murder of Alaysia Chambers. Importantly, throughout trial, the State and all defendants maintained that the two victims were not the intended targets of gunfire that broke out in the early morning hours of August 31, 2014, leaving Burroughs dead and Chambers badly injured. The State alleged that both were shot when one or more of the defendants, acting as accomplices, fired upon a passing car while standing in the rear of Brace's parked vehicle on a public roadway in Paterson. Under a theory of transferred intent, the State urged that defendants shot with intent to kill those in the passing vehicle but missed and inadvertently shot and killed Burroughs, a third-party bystander on the sidewalk, and wounded

---

[1] Green and Brace were also both convicted of two counts of second-degree possession of a weapon for an unlawful purpose, N.J.S.A. 2C:39-4(a).

3

Chambers, who sat in Brace's car. Neither victim threatened any violence against defendants.[2]

Chambers survived her serious injuries that left her unable to recall the shooting incident when she testified at trial. Described by other witnesses as Brace's girlfriend, Chambers recounted the largely undisputed events leading up to the shooting, recalling Brace drove Chambers and her friends to a party with two other males in the car, including Oliver. As Brace drove the same group home, their car came under gunfire. Brace pulled over, called friends who arrived and picked him up in a van, and Chambers drove her friends back to her house in Brace's car. Brace later asked Chambers to bring his car to a specified location, where she soon arrived with her friends. Chambers testified she could not recall what followed before waking up in the hospital, where she remained for six months.

Chambers' friend, Bianca Reeves, testified about the shooting. She confirmed that she and her sister went to the earlier party with Chambers, Brace, and Oliver, and when Brace's car was fired upon as they drove home, Brace, visibly upset, summoned friends who picked him up. Chambers, Reeves, and

---

[2] The court instructed the jury on the law of transferred intent, confirming "the State does not allege that Jaleek Burroughs and Alaysia Chambers were the intended victims of defendants' conduct."

4

her sister drove around until Brace called for the car. When the three arrived as directed, "a lot" of people, including Brace and Oliver, were already gathered and convened near the car, but she was uncertain whether Green was present. Brace told them where to park, and she recalled Oliver took the keys to open the trunk to get a hoodie, before sitting on the trunk with Brace.

Hearing gunshots, Reeves, sitting in the backseat behind Chambers, and her sister, seated in the front passenger seat, ducked, but Chambers, still in the driver's seat, was shot in the head. Brace, visibly distraught, remained with Chambers at the scene as they called the police and ambulance and stated, "I can't believe these dumb ass n[******]shot her [in the] f[***]ing head." Reeves waited with Chambers, but Brace left the scene, calling Reeves later to check on Chambers, expressing regret that "he should have warned" them "that it was going to happen."

Police arrived to find Burroughs lying on the sidewalk where he was shot a half-block from where Chambers remained unresponsive in Brace's car. Burroughs was pronounced dead at the scene.

Reluctant eyewitness Jocelyn Suggs provided two statements to police, which were admitted as evidence under State v. Gross, 121 N.J. 1 (1990), after the trial court determined Suggs feigned no recollection of the shooting incident.

A-0960-22

Suggs told police she arrived at the scene prior to the shooting to find a large group had gathered by Brace's car, including Brace and "Jahmad." She heard people talking about the earlier shooting and that there would be another shooting. Suggs claimed "Jamari" and "Jahmad" both said they had guns.

Suggs saw Brace in a black hoodie reach into his car and retrieve a gun, although she said others were also wearing black. A gold Ford Taurus drove by, and she recalled hearing comments from within the group indicating they would shoot if the car drove past again. When the car passed the second time, the group exchanged gunfire with the occupants of the Taurus. She saw Brace shooting, running away, but then coming back when he realized Chambers had been shot. Some weeks after the shooting, she heard that Oliver admitted he "shot the n[*****] in the eye."

Shell casings from .45 caliber and .9-millimeter handguns were concentrated in the area behind the rear of Brace's car, and bullet holes appeared in the driver's side rear windshield entering the interior. Ballistics showed the flightpath of a bullet passing through the back windshield and through the driver's side headrest, and a bullet projectile was found on the dashboard ledge. That fragment matched the markings on the bullet retrieved from Burroughs'

6

body. Police also discovered a .9-millimeter Glock 19 handgun in an alley near the scene.

Surveillance video showed the large group of roughly fifty people at the scene as the Taurus sped by and depicted Burroughs falling to the ground. The investigation revealed no link between Burroughs and anyone connected to the incident other than his untimely presence on the sidewalk when the shooting occurred.

During the trial, law enforcement testified that on September 23, 2014, an individual reported someone running by his yard discarding a .9-millimeter Springfield XD handgun with one bullet in the chamber and a handgun magazine. Police recounted the witness' identifying Green from a photo array as the person who threw the gun, and further explained that forensic testing revealed Green's fingerprints on the gun and the magazine. Ballistics testing further matched that gun with shell casings from the shooting scene.

In closing arguments, Green's counsel urged Green had no involvement in the shooting and, discounting Suggs, claimed no evidence placed him there. While conceding Green discarded one of the firearms weeks later, Green's counsel urged that this was a "shared" "community weapon" and Green's later possession of the gun had no connection to its use in the shooting. Brace's

7

counsel conceded Brace's presence, but argued there was no proof that Brace shot at the Taurus, mistakenly hitting the victims. He argued that bullets from occupants in the Taurus likely hit and killed Burroughs and injured Chambers as well.[3]

During deliberations, the jury questioned whether the evidence regarding Green's possession of the gun on September 23 was relevant to the August 31 gun charges. Specifically, after the judge consulted with counsel and asked the jury to clarify the question, the jury inquired, "is the gun that Green discarded on [September 23, 2014] applicable to the crime on [August 31, 2014] as to Green being charged with unlawful possession of a weapon on [August 31, 2014]?" In response, the trial judge stated, "that's a question for you to decide, and that's a question that you will be deciding as jurors, that same question."

After the jury returned its verdicts, the court sentenced both Brace and Green to aggregate terms of twenty-seven years' imprisonment, subject to the No Early Release Act parole ineligibility, N.J.S.A. 2C:43-7.2.

---

[3] Oliver similarly argued lack of evidence and the likelihood that someone in the Taurus shot the victims.

A-0960-22

## B. Direct Appeals

We affirmed both defendants' direct appeals. State v. Green, No. A-5491-16 (App. Div. Feb. 18, 2020); State v. Brace, No. A-0400-17 (App. Div. Feb. 18, 2020). We rejected Green's arguments, concluding sufficient evidence supported the jury's verdict, the trial court properly admitted Suggs' statement, the prosecutor's statements in closing and the court's response to the jury question regarding the gun found on September 23 were not plain error, and Green's sentencing challenges did not merit relief.

We denied Brace's appeal, determining sufficient evidence supported the jury's finding that Brace either solicited, aided, or agreed to assist in the aggravated manslaughter of Burroughs, the prosecutor's display of the photograph of Burrough's body at the scene was not clearly capable of producing an unjust result as the trial court gave a curative instruction, and the sentence was neither erroneous nor excessive.

## II.

## A. Green's PCR Petition

On June 30, 2021, Green initially filed a pro se PCR petition alleging that trial counsel was ineffective for: failing to investigate, failing to request a self-defense instruction, failing to effectively negotiate a plea agreement, failing to

request severance, admitting in closing argument Green possessed, weeks later, the firearm used in the shooting, failing to advise Green of his right to testify, and failing to object to the court's response to the jury question regarding the firearm. He further challenged generally his sentence as illegal, and claimed appellate counsel was ineffective for failing to raise the trial court's alleged error in failing to charge self-defense.

PCR counsel "incorporated by reference" Green's pro se claims but substantively raised with specificity only the claims that trial counsel failed to investigate an alibi defense, failed to advise of the right to testify, failed to object to hearsay testimony regarding Green's identification, failed to object to the court's erroneous response to the jury's firearm question, and improperly conceded Green's possession of the firearm linked to the shooting. In support of the amended petition, Green presented an unsworn statement claiming he told trial counsel he wanted to testify at trial, but counsel told him he "needed to remain silent," never advising that the ultimate decision was his, not counsel's to make. He further claimed he never authorized trial counsel's strategy to concede he possessed the firearm weeks later.

Regarding the alleged alibi, Green's statement indicated only that he told counsel Nyette Santiago could testify that Green was with her at her home at the

10

time of the shooting, but did not elaborate on that alleged conversation. Green also submitted Santiago's unsworn statement claiming she dated Green at the time and would have testified Green was with her from the afternoon of August 30 until noon on August 31, she received information about the shooting on social media between 3:00 a.m. and 5:00 a.m., and simultaneously turned and saw Green sleeping.

In opposition, the State submitted Green's trial counsel's sworn certification, averring he advised Green of his right to testify, as confirmed by colloquy with the trial court on the record, he was "NEVER advised by Mr. Green [or anyone else] that he had an alibi," and he perceived "no merit" in objecting to the court's correct response to the jury's question regarding the September 23 firearm evidence. As for allowing, without objection, hearsay witness identification of Green, counsel maintained he discussed this strategy with Green to thwart the impact of the identification and fingerprint evidence and to short-circuit potential live testimony identifying Green in court as having discarded one of the guns—bearing Green's fingerprints—used in the shooting. Counsel stated his conceding Green's later possession of the gun did not admit guilt as Green was not charged with that offense, but instead offered an explanation for his fingerprints on one of the guns used in the charged offenses.

11

The same judge who presided over the trial considered Green's PCR arguments. PCR counsel argued an evidentiary hearing was required to resolve the conflicting claims between Green and counsel regarding the alleged alibi witness, counsel's advice regarding Green's right to testify, and Green's claim that counsel conceded guilt without Green's authorization.

The trial prosecutor argued the following in opposition to PCR. Green's belated alibi was a bald assertion, supported by only non-conforming, unsworn, and untrustworthy statements that should be disregarded. The alibi claim was further belied by trial counsel's sworn certification, Green's own suppressed statement admitting he was present and shot in the air, and his companion pro se claim that trial counsel failed to raise self-defense. Counsel exercised sound strategic judgment in conceding Green's uncharged firearm possession on September 23. Likewise, counsel's tactically obviating live witness identification testimony in favor of hearsay through a police witness was reasonable. Finally, counsel properly refrained from objecting to the trial court's response to the jury question about the firearm, citing our decision on direct appeal.

The court denied PCR, issuing a written decision. The court stated it "agree[d] with the arguments of the State" and found "no merit" to Green's

12

alleging that counsel disregarded an available alibi, finding its veracity further undermined by the concomitant pro se claim that trial counsel failed to raise self-defense, which would have placed Green at the scene. Relying on its colloquy with Green at trial, in which Green acknowledged his right to testify, the court rejected Green's claim that he did not understand that decision was his to make. The court cited the direct appeal decision in finding counsel's failure to object to the jury's firearm question was not deficient. The court found counsel's permitting hearsay eyewitness identification was "objectively reasonable and strategic," and similarly discerned no constitutional violation or deficiency in conceding Green's possession of the firearm on September 23, as it was not an admission of guilt and Green faced no substantive charge arising out of that gun possession.

The court found Green's pro se claims[4] "regarding plea negotiations, self-defense, and severance from codefendants" unsupported by law or certification and his sentencing arguments were addressed previously on direct appeal. The court deemed these arguments "were merely bald assertions of ineffective assistance of counsel" that did not warrant relief or an evidentiary hearing.

---

[4] Green does not reprise those pro se claims on this appeal.

A-0960-22

B.    Brace's PCR Petition

Brace's PCR petition similarly proceeded before the trial judge.  In August 2020, Brace initially filed a pro se petition for PCR claiming only trial counsel's prejudicial deficiency in failing to object to the photograph of Burroughs' body at the scene.  PCR counsel later filed a brief, challenging exclusively the constitutionality of the court's admission of Suggs' statements.  Brace next filed a pro se supplemental brief, listing additional alleged errors,[5] and a motion for substitution of PCR counsel, which was denied, alleging that his PCR counsel refused to raise Brace's arguments that trial counsel was deficient for failing to request a charge on "defense of another," "use of force in protection of another person," N.J.S.A. 2C:3-5, and that the trial court erred failing to so instruct.

The court denied Brace's petition without an evidentiary hearing, issuing a written decision.  Although finding the claims regarding Suggs' statements were barred by Rule 3:22-3, the court nevertheless reiterated its careful

---

[5]  Brace's appendix on appeal includes only several pages from his pro se brief filed with the PCR court, listing without factual or legal argument the following alleged errors by trial counsel:  failure to object to prosecutorial misconduct, "highly inflammable photographic evidence," "inadmissible hearsay," "other-crimes evidence" or request a "cautionary and limiting instructions;" failure to "call" and "effectively cross-examine witnesses;" failure "to perform an adequate investigation;" "failure to object to errors and request jury instructions;" "failure to request a self-defense/imperfect self-defense" and "passion provocation jury instruction;" and failure to advocate at sentencing.

A-0960-22

consideration of the Gross factors in its earlier ruling, adding that comparisons of the circumstances surrounding Suggs' statements to the manner in which police obtained Green's later-suppressed statement did not change those findings. The court rejected Brace's pro se claims that counsel was prejudicially deficient, recognizing counsel's "overall effective assistance," best demonstrated by securing Brace's acquittal of the murder and attempted murder charges. The court found no prejudicial error in defense counsel's failing to object to the crime scene photograph of Burroughs, citing the court's sufficient remedial instruction to the jury.

Regarding the pro se claims that trial counsel was deficient for failing to request jury instructions on "[d]efense of [a]nother" and the companion claim that the trial court erred in failing to so instruct, the court found the claim was barred by Rule 3:22-3, as it should have been raised on direct appeal. The court also found these to be bald assertions that alternatively fail for "lack [of] factual or legal merit." The court found PCR counsel similarly reasonable and not deficient in excluding this claim from his PCR submission.

## III.

Defendants appeal from the denial of PCR, raising the following arguments:

A. Green's Arguments

POINT I

[DEFENDANT] IS ENTITLED TO AN EVIDENTIARY HEARING ON HIS CLAIMS THAT COUNSEL WAS INEFFECTIVE FOR FAILING TO INVESTIGATE AND CALL AN ALIBI WITNESS, FAILING TO OBJECT TO HEARSAY THAT IMPLICATED HIS CLIENT, AND FAILING TO OBJECT TO THE TRIAL COURT'S RESPONSE TO A JURY QUESTION.

POINT II

COUNSEL RENDERED INEFFECTIVE ASSISTANCE BY CONCEDING [DEFENDANT]'S GUILT DURING SUMMATION.

B. Brace's Arguments

POINT I

THIS MATTER MUST BE REMANDED FOR AN EVIDENTIARY HEARING BECAUSE DEFENDANT ESTABLISHED A PRIMA FACIE CASE OF TRIAL COUNSEL'S INEFFECTIVENESS FOR FAILING TO REQUEST A JURY CHARGE OF "DEFENSE OF ANOTHER" ("USE OF FORCE FOR THE PROTECTION OF OTHER PERSONS," N.J.S.A. 2C:3-5).

POINT II

IN THE ALTERNATIVE, THIS MATTER MUST BE REMANDED FOR A NEW PCR HEARING BECAUSE PCR COUNSEL FAILED TO ADVANCE

16

THE CLAIM THAT TRIAL COUNSEL WAS INEFFECTIVE FOR NOT ARGUING THAT THERE WAS A RATIONAL BASIS FOR CHARGING THE JURY WITH "DEFENSE OF ANOTHER" ("USE OF FORCE FOR THE PROTECTION OF OTHER PERSONS," N.J.S.A. 2C:3-5).

C. Brace's Pro Se Arguments

POINT I

THE TRIAL COURT'S RULING THAT PETITIONER'S ISSUE WAS BEST SUITED FOR DIRECT APPEAL WAS ERRON[E]OUS; THEREFORE THE PRESENT MATTER MUST BE REMANDED FOR AN EVIDENTIARY HEARING.

POINT [II]

PCR COUNSEL PROVIDED INEFFECTIVE ASSISTANCE BY HIS FAILURE TO ADVANCE PETITIONER'S PRO SE ISSUES; THEREFORE, THE MATTER SHOULD BE REMANDED TO THE TRIAL COURT FOR A NEW HEARING FOR PCR.

POINT [III]

THE PETITIONER WAS DENIED THE RIGHT TO A FAIR TRIAL AND THE RIGHT TO DUE PROCESS WHERE THE TRIAL COURT ISSUED DEFECTIVE JURY INSTRUCTIONS.

A. THE TRIAL COURT FAILED TO CHARGE THE JURY ON THE JUSTIFICATION "DEFENSE OF ANOTHER."

B. TRIAL COUNSEL FAILED TO OBJECT TO THE OMISSION OF THE "SUBSTANTIAL STEP"

17

COMPONENT IN THE JURY INSTRUCTION ON "ATTEMPT."

C. THE DEFENDANT WAS DENIED THE EFFECTIVE ASSISTANCE OF COUNSEL.

IV.

We review the legal conclusions of a PCR court de novo. State v. Harris, 181 N.J. 391, 419 (2004). "Where, as here, the PCR court ha[d] not conducted an evidentiary hearing, we review its legal and factual determinations de novo." State v. Aburoumi, 464 N.J. Super. 326, 338 (App Div. 2020).

New Jersey's PCR petition serves as an "analogue to the federal writ of habeas corpus." State v. Preciose, 129 N.J. 451, 459 (1992). "[N]either a substitute for direct appeal" for those criminally convicted nor a vehicle to re-litigate matters already resolved on their merits, PCR proceedings can offer the best opportunity for ineffective assistance claims to be reviewed. Id. at 459-60. When petitioning for PCR, a defendant must establish, by a preponderance of the credible evidence, entitlement to the requested relief. Id. at 459. To sustain this burden, defendants must articulate specific facts, "which, if believed, would provide the court with an adequate basis on which to rest its decision." State v. Mitchell, 126 N.J. 565, 579 (1992).

To establish an ineffective assistance of counsel claim, a defendant must demonstrate: (1) "counsel's performance was deficient"; and (2) "the deficient performance prejudiced the defense." Strickland v. Washington, 466 U.S. 668, 687 (1984); see also State v. Fritz, 105 N.J. 42, 58 (1987) (adopting the Strickland two-pronged analysis in New Jersey). "That is, the defendant must establish, first, that 'counsel's representation fell below an objective standard of reasonableness' and, second, that 'there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.'" State v. Alvarez, 473 N.J. Super. 448, 455 (App. Div. 2022) (quoting Strickland, 466 U.S. at 688).

Claims are procedurally barred if they could have been made on direct appeal, Rule 3:22-4, or are made after a prior adjudication on the merits. See R. 3:22-5; see also State v. McQuaid, 147 N.J. 464, 483 (1997) ("A defendant may not use a petition for [PCR] as an opportunity to relitigate a claim already decided on the merits."). "A ground could not reasonably have been raised in a prior proceeding only if defendant shows that the factual predicate for that ground could not have been discovered earlier through the exercise of reasonable diligence." R. 3:22-4(a).

A-0960-22

Importantly, our review of counsel's performance under the first Strickland requirement "must be highly deferential," Strickland, 466 U.S. at 689, and we "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance," requiring defendants to "overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'" Ibid. (quoting Michel v. Louisiana, 350 U.S. 91, 101 (1955)). "Merely because a trial strategy fails does not mean that counsel was ineffective." State v. Bey, 161 N.J. 233, 251 (1999). Further, "[a]ny factual assertion that provides the predicate for a claim of relief must be made by an affidavit or certification pursuant to Rule 1:4-4 and based upon personal knowledge of the declarant before the court may grant an evidentiary hearing." R. 3:22-10(c); see State v. Cummings, 321 N.J. Super. 154, 170 (App. Div. 1999).

Ultimately, "[a]n error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if [it] had no effect on the judgment." Strickland, 466 U.S. at 691. Under Strickland's second requirement, a defendant must also show "counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable."

A-0960-22

Id. at 687. Errors with "some conceivable effect on the outcome" fall short of warranting relief. Id. at 693.

The mere raising of a claim for PCR does not entitle the defendant to an evidentiary hearing. See Cummings, 321 N.J. Super. at 170. Rather, "[i]f the court perceives that holding an evidentiary hearing will not aid the court's analysis of whether the defendant is entitled to [PCR], . . . then an evidentiary hearing need not be granted." State v. Marshall, 148 N.J. 89, 158 (1997) (citations omitted). Evidentiary hearings are warranted only when: "(1) the defendant establishes a prima facie case in support of PCR; (2) the court determines that there are disputed issues of material fact that cannot be resolved by review of the existing record; and (3) the court determines that an evidentiary hearing is required to resolve the claims asserted." State v. Vanness, 474 N.J. Super. 609, 623 (App. Div. 2023) (citing State v. Porter, 216 N.J. 343, 354 (2013)). Against this well-settled legal backdrop, we consider each appeal.

V.

A.    Green's Appeal

We consider Green's arguments sequentially as raised. First, we concur with the PCR court's finding Green failed to make the required showing that trial counsel was deficient for failing to raise an alibi defense. The unsworn

statements of Green and Santiago, contrasted with trial counsel's sworn statement that he was never advised of any potential alibi, lacked the requisite certification of veracity to warrant further consideration. We are mindful that counsel's "[f]ailure to investigate an alibi defense is a serious deficiency that can result in the reversal of a conviction." Porter, 216 N.J. at 353. Nevertheless, Rule 3:22-10(c) provides that factual claims "must" be made under oath, and here the unsworn statements, undermined by the record, are too anemic to overcome the strong presumption of reasonableness that shrouds counsel's performance. Accordingly, we conclude Green's belated and unsworn alibi claims failed to meet the prima facie threshold. See Cummings, 321 N.J. Super. at 170-71; see also R. 1:4-4.

We next conclude Green fell short under both Strickland prongs in claiming defense counsel unreasonably refrained from objecting to the investigative officer's hearsay testimony regarding witness identification of Green as the person who discarded the .9-millimeter firearm on September 23 with Green's fingerprints on it. Trial counsel certified this strategy was to allow the detached hearsay rather than forcing live and likely compelling testimony from a lay witness connecting Green to one of the firearms used in the shooting.

Green failed to show counsel was unreasonable in attempting to minimize the impact of the evidence while simultaneously offering an alternative explanation for Green's prints on the weapon. Moreover, Green failed to show prejudice, as it is likely the State would have called live witnesses to overcome the hearsay objection. In either form, this identification evidence connected Green to the gun, to which he was already scientifically connected via forensic fingerprint analysis. Consequently, Green failed to show how an objection to the hearsay, thereby forcing live identification testimony, was likely to lead to a different result.

We similarly find no merit to Green's claim that his counsel was ineffective for failing to object to the trial court's response to the jury question about whether the gun found on September 23 factored into their consideration of the unlawful possession of a weapon charge from August 31. We concur with the PCR court that our decision on direct appeal resolves this issue. In finding the court did not err, we concluded:

> Any answer to that question, other than that given by the court, would have invaded the province of the jury which had to decide if the State's circumstantial evidence was sufficient to prove the crime beyond a reasonable doubt or if, as defense counsel argued, the

inferences drawn from the State's evidence were insufficient to prove that crime.

[Green, slip op. at 27.]

Accordingly, failure to object to an unobjectionable ruling by the trial court does not merit consideration.

Finally, we are not persuaded that counsel improperly admitted guilt in summation by conceding that Green possessed the .9-millimeter firearm on September 23. Specifically, Green casts this admission as a "structural error" impacting his Sixth Amendment right to autonomy in asserting his innocence. See McCoy v. Louisiana, 584, U.S. 414, 417 (2018) (finding a violation of the Sixth Amendment when counsel admitted the defendant's guilt to murder to strategically gain favor with the jury and avoid the death penalty). Here, we concur with the PCR court that counsel's strategy in conceding Green possessed the gun three weeks after the murder, when he faced no charge for that possession on that date, did not implicate his sole prerogative to choose whether to admit guilt to a charge or claim innocence. This tactic fell within the category of trial strategy that Green has failed to show was unreasonable in the face of fingerprint analysis and an eyewitnesses identification connecting Green to the gun located on September 23. Further, even were we to find the tactic

A-0960-22

unreasonable, we fail to perceive the prejudice when the existing evidence that Green possessed the gun on that date was overwhelming.

Any arguments we have not expressly addressed lack sufficient merit to warrant discussion in a written opinion.  R. 2:11-3(e)(2).

B.    Brace's PCR Appeal

We first address the arguments that the jury should have been instructed on "defense of another," specifically "use of force in protection of another person."  See N.J.S.A. 2C:3-5.  The PCR court found claims against both trial counsel and PCR counsel lacked merit as Brace did not show error in "failing to argue a rational basis for [d]efense of [a]nother," as "the trial judge has the discretion to decide that a 'particular issue lacks factual or legal merit,'" and these amounted to bald assertions lacking such support.  The court also found that any claim that the trial court similarly erred by failing to sua sponte give this instruction was barred procedurally as it should have been raised on direct appeal.

On de novo review of these claims, we likewise perceive no merit.  By its plain language, N.J.S.A. 2C:3-5 expressly provides that use of force in the protection of others is only justifiable when "[t]he actor would be justified under

25                                                     A-0960-22

section 2C:3-4 [the self-defense statute] in using such force to protect himself against injury he believes to be threatened to the person whom he seeks to protect . . . ." N.J.S.A. 2C:3-5(a)(1). Further,

> [w]hen the person whom the actor seeks to protect would be obliged [if acting in self-defense] to retreat or take similar action if he knew that he could obtain complete safety by doing so, the actor is obliged to try to cause him to do so before using force in his protection . . . .
>
> [N.J.S.A. 2C:3-5(b)(2).]

Looking next to the pertinent parameters of self-defense as directed, "under the Criminal Code 'the use of force upon or toward another person is justifiable when the actor reasonably believes that such force is immediately necessary for the purpose of protecting himself against the use of unlawful force by such other person on the present occasion.'" State v. Fowler, 239 N.J. 171, 185 (2019) (first emphasis omitted) (quoting N.J.S.A. 2C:3-4(a)). As such, our Supreme Court has held that self-defense provides justification for use of force "against the party who uses force against the defendant," but does not justify or excuse the use of force against a third party. Id. at 186 (recognizing that self-defense instruction was not appropriate when the victim was not the defendant's alleged attacker, but instead a "third-party bystander"); see also N.J.S.A. 2C:3-9 ("[W]hen the actor is justified under sections 2C:3-3 to 2C:3-8 in using force

upon or toward the person of another but he recklessly or negligently injures or creates a risk of injury to innocent persons, the justification afforded by those sections is unavailable in a prosecution for such recklessness or negligence towards innocent persons."). Additionally, use of deadly force is not permitted in self-defense if "[t]he actor . . . provoked the use of force against himself in the same encounter," N.J.S.A. 2C:3-4(b)(2)(a), or when the actor can retreat in "complete safety" to avoid using force, N.J.S.A. 2C:3-4(b)(2)(b).

Guided by these principles as applied to the trial record and viewed favorably to Brace, we conclude Brace did not demonstrate any prejudicial deficiency by either trial or PCR counsel in perceiving that neither factual nor legal basis existed for this instruction. Preliminarily, no view of the record supports a contention that Brace's encounter with the Taurus was an unexpected event of unanticipated unilateral aggression by its occupants from which there was no safe retreat. More importantly, there was no evidence that either Burroughs or Chambers were aggressors or threatened harm to Chambers or to Brace; they were bystanders caught in the line of fire. Accordingly, Brace, acting as he now alleges on Chambers' behalf, would not have been justified within the meaning of N.J.S.A. 2C:3-5 or N.J.S.A. 2C:3-4(a) in injuring a third-party. See Fowler, 239 N.J. at 185-86; see also N.J.S.A. 2C:3-9. As such, Brace

A-0960-22

failed to show his entitlement to this instruction even if we accepted arguendo that the record supported an alternative claim that Brace shot Chambers and Burroughs attempting to defend Chambers.

Brace has similarly not shown a reasonable probability that a different more favorable outcome might have resulted than that achieved under the theory pursued at trial, in which the jury acquitted him on both the murder and attempted murder charges in favor of lesser-included reckless offenses offered for their consideration. They were also carefully and correctly instructed on the law of causation. Brace made no viable showing of ineffective assistance by trial counsel or error in the trial court's failure to sua sponte provide the instruction. We accordingly see no deficiency in PCR counsel's performance and note that the court nevertheless considered this claim and rejected it.

As to Brace's pro se challenge to the trial court's admission of Suggs' statements, we concur with the PCR court's finding the claim both unpersuasive and barred by Rule 3:22-3, as it should have been raised on direct appeal. We deem Brace's remaining claims, baldly asserted without detail of fact or law, lacking sufficient merit to warrant further discussion. R. 2:11-3(e)(2).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

28